**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BEVER-LEIGH B. PENNY, | ) Case No. CV 11-05567-ODW (MANx) |
| Plaintiff, | ) |
| | ) |
| v. | ) Order **GRANTING in PART** and |
| | ) **DENYING in PART** Defendants' |
| NDEX WEST LLC, *et al.*, | ) Motions to Dismiss [32, 47, 48] |
| Defendants. | ) |
| _____ | ) |

## I.   INTRODUCTION

Pending before the Court are Defendants' four concurrently filed Motions: (1) Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") November 1, 2011 Motion to Dismiss Plaintiff Bever-Leigh B. Penney's ("Plaintiff") First Amended Complaint[1] ("FAC") and Motion to Strike Portions of Plaintiff's FAC (Dkt. No. 32); (2) Defendant Stewart Lending Service's ("SLS") December 20, 2011 Motion to Dismiss Plaintiff's FAC (Dkt. No. 47); and (3) Defendants LSI Title Company ("LSI") and Meghong But's

_____

[1]Defendants NDeX West, LLC ("NDeX"), Ric Juarez ("Juarez"), and Kellie C. Boswell ("Boswell") join in Wells Fargo's Motion to Dismiss.  (Dkt. No. 34.)

1

("But") (collectively, "LSI Defendants") December 20, 2011Motion to Dismiss Plaintiff's FAC (Dkt. No. 48).[2]

## II.   BACKGROUND

On May 19, 1998, Plaintiff obtained fixed-rate mortgage loan in the amount of $269,500.00 from Di Tech Funding Corporation ("Di Tech"), which was secured by a deed of trust ("DOT") encumbering the property located at 9404 Wayside Drive, Shadow Hills, California 91040.  (FAC ¶ 36; Wells Fargo's Request For Judicial Notice ("RJN"), Exhs. A, B.)[3]  This property includes two parcels of real property identified as APN 2549-016-001 ("001 Lot") and APN 2549-016-004 ("004 Lot").  (Wells Fargo's RJN, Exh. B.)  In connection with the loan, Plaintiff executed a promissory note ("Note"), whereby she agreed to make payments of $1,884.38 per month.  (Wells Fargo's RJN, Exh. A.)  The DOT expressly permitted the lender/beneficiary to appoint a loan servicer to collect payments on its behalf. (Wells Fargo's RJN, Exh. B; Mot. at 11.)

On September 24, 1998, Di Tech executed a Corporation Assignment of Deed of Trust, which assigned Plaintiff's DOT to GE Capital Mortgage Services ("GE Capital").  (Wells Fargo's RJN, Exh. C.)  On March 8, 2005, GE Capital executed a second Assignment of Deed of Trust ("ADOT") assigning Plaintiff's DOT to Wells Fargo.  (Wells Fargo's RJN, Exh. D.)  The ADOT was filed with the Los Angeles County Recorder's office on April 6, 2005.  (Id.)  Further, the ADOT was executed by Sherry

---

[2]Where appropriate, the Court refers to all Defendants collectively as "Defendants."  Because named defendants Sherry Doza ("Doza") and Tipi Robertson ("Robertson") do not independently move to dismiss Plaintiff's FAC or join in any other Defendant's Motion to Dismiss, the Court does not address Plaintiff's tenth and eleventh claims as they pertain to Doza and Robertson.

[3]To the extent the Court relies on any documents not attached directly to Plaintiff's FAC, those documents are referenced in the FAC and are thereby incorporated by reference.  Furthermore, "[a] trial court may presume that public records are authentic and trustworthy," *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999), and thus fall within the purview of Federal Rule of Evidence 201.  *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  Rule 201 states that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Accordingly, the Court takes judicial notice of the filing dates for the documents to which it cites but does not take judicial notice of the facts contained therein.

Doza on behalf of GE Capital.  (*Id.*; FAC ¶¶ 232–35.)  At that time, Doza was also an employee of SLS. (FAC ¶ 234.)

Between July 1, 2010, and November 16, 2010, Plaintiff made various mortgage payments amounting to $9,026.01 (FAC ¶¶ 207, 218), including a $700.00 payment in August 2010 and a $550.00 payment in November 2010.  (FAC ¶ 99.)

As of December 29, 2010, Plaintiff was in default on her mortgage in the amount of $15,192.28.  (Wells Fargo's RJN, Exh. E.)  As a result of Plaintiff's default, a Notice of Default and Election to Sell Under Deed of Trust was recorded on December 30, 2010, in the Los Angeles County Recorder's Office.  (*Id.*)  The Notice of Default expressly incorporated the Deed of Trust.  (*Id.*)  Thereafter, on May 4, 2011, a Substitution of Trustee was recorded against the Property.  (Wells Fargo's RJN, Exh. D.)  Finally, a Notice of Trustee's Sale was recorded against the Property on May 16, 2011.  (Wells Fargo's RJN, Exh. G.)

Beginning in February 2011, Wells Fargo phone representatives initially informed Plaintiff that,

> should, and when, Plaintiff applied for a loan modification on Plaintiff's home with [Wells Fargo] under the United States Government's HAMP (Home Affordable Mortgage Program), all foreclosure proceedings would be suspended from the time of application throughout the entire duration of the parties's loan modification process, including, but not limited to, during a three-month probationary lower payment period, and beyond, into permanent loan modification should it be granted.

(FAC ¶ 126.)

On February 7, 2011, Plaintiff listed the 004 Lot with a real estate agent with the intent to sell the land in order to rectify arrearage on her mortgage.  (FAC ¶ 72.)

On May 27, 2011, Plaintiff was told by Defendant Wells Fargo Bank NA's Loss Mitigation Department that the Trustee sale had been scheduled for June 9, 2011.  (FAC ¶ 95.)  Plaintiff was informed that she "could either beg for time to close on the land sale and reinstate the mortgage as is, or gamble on the off chance of a loan modification coming through before the Trustee Sale date less than two weeks away, an unlikely event

to be sure, in which case only other eventuality [sic] the sale date could be postponed." (*Id.*)  To date, the foreclosure sale has been postponed multiple times, and the trustee's sale is still pending.  (FAC ¶¶ 58, 60.)  Plaintiff claims that she has suffered lost weight and lost sleep as a result of Defendants' actions.  (FAC ¶ 225.)

As a result of the foregoing, Plaintiff filed a Complaint on June 8, 2011, in Los Angeles County Superior Court against Defendants NDeX West, LLC; Wells Fargo Bank, N.A.; and Wells Fargo Home Mortgage, Inc. alleging, *inter alia*, claims for fraud, unfair debt collection practices, and wrongful foreclosure. (Dkt. No. 1.) On July 6, 2011, Wells Fargo timely removed the case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*Id.*)  On October 18, 2011, this Court granted Plaintiff leave to amend her Complaint.  (Dkt. No. 29.)  Also on October 18, 2011, Plaintiff filed her FAC, which included several new claims and defendants.  Plaintiff's FAC contains a total of twelve, styled as follows:

(1)   promissory estoppel in violation of Restatement (Second) of Contracts by Wells Fargo;

(2)   promissory fraud in violation of Restatement (Second) of Torts by Wells Fargo;

(3)   fraudulent misrepresentation in violation of Restatement (Second) of Torts section 526 by Wells Fargo;

(4)   fraudulent misrepresentation, false representation, and deceptive means in violation of Articles 2.7 and 2.7(11) of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA") by Wells Fargo;

(5)   unfair collection practices and unfair practices in violation of Articles 2.6 and 2.6(9) of the RFDCPA and 15 U.S.C. § 1692f by Wells Fargo;

(6)   conspiracy and violation of California Civil Code section 2924(a)(1) by Wells Fargo, NDeX, LSI, and But;

(7)   negligence in violation of Restatement (Second) of Torts section 282 by LSI, Juarez, and Boswell;

4

(8)     fraud, misrepresentation, false and misleading representations, and
        conspiracy in violation of the Restatement (Second) of Torts section 526,
        18 U.S.C. § 1001, 18 U.S.C. § 1341, 18 U.S.C. § 1349, 15 U.S.C.
        § 1692e(2) by Wells Fargo, NDeX, LSI, and But;

(9)     misrepresentation and unfair business practices in violation of the
        RFDCPA Articles 2.6 and 2.7 by Wells Fargo, NDeX, LSI, and But;

(10)    negligent infliction of emotional distress by Wells Fargo, NDeX, SLS,
        Doza, Robertson, LSI, But, Juarez, and Boswell;

(11)    fraud in violation of Restatement (Second) of Torts section 526, 18
        U.S.C. § 1001(a)(1)–(3), 18 U.S.C. § 1341, 18 U.S.C. § 1346, and 18
        U.S.C. § 1349 by Wells Fargo, SLS, Doza, and Robertson;

(12)    fraud and false or misleading representations in violation of the
        Restatement (Second) of Torts section 526, 18 U.S.C. § 1001(a)(1)–(3),
        18 U.S.C. § 1341, 18 U.S.C. § 1346, 18 U.S.C. § 1349, 15 U.S.C.
        § 1692e by Wells Fargo.

Defendants now move to dismiss Plaintiff's FAC in its entirety.   The Court
addresses the parties' arguments below.

### III.     LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a
complaint generally must satisfy only the minimal notice pleading requirements of Rule
8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  Rule 8(a)(2) requires "a
short and plain statement of the claim showing that the pleader is entitled to relief." Fed.
R. Civ. P. 8(a)(2).  For a complaint to sufficiently state a claim, its "[f]actual allegations
must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 555 (2007).  Mere "labels and conclusions" or a "formulaic
recitation of the elements of a cause of action will not do." *Id.*  Rather, to overcome a
12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to
state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949 (2009) (internal quotation marks omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement of relief." *Id.* (internal citation and quotation marks omitted).

When considering a Rule 12(b)(6) motion, a court is generally limited to considering material within the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) and *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Finally, "[a] document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *cf.* Fed. R. Civ. Proc. 8(f) ("All pleadings shall be construed as to do substantial justice.").

## IV.   DISCUSSION

The Court begins its analysis by addressing Plaintiff's first claim for promissory estoppel. Because Plaintiff predicates many of her claims on provisions of the RFDCPA, the Court turns next to Plaintiff's RFDCPA claims. The Court then proceeds to consider

Plaintiff's various fraud claims together, followed by Plaintiff's claim for violation of California Civil Code section 2924.  The Court concludes by addressing Plaintiff's negligence claims.

### A.   PLAINTIFF'S FIRST CLAIM FOR PROMISSORY ESTOPPEL

Plaintiff's first claim alleges that Wells Fargo is liable to her under a promissory estoppel theory.  To state a claim for promissory estoppel, Plaintiff must allege (1) a promise clear and unambiguous in its terms, (2) reliance by Plaintiff on that promise, (3) that Plaintiff's reliance was both reasonable and foreseeable, and (4) damages resulting from her reliance.  *Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co., Inc.*, 688 F. Supp. 2d 940, 953 (N.D. Cal. 2010); *Aceves v. U.S. Bank, N.A.*, 196 Cal. App. 4th 218, 225 (Cal. Ct. App. 2011). "[T]he doctrine of promissory estoppel is used to provide a substitute for the consideration [that] ordinarily is required to create an enforceable promise." *Raedeke v. Gibraltar Sav. & Loan Ass'n*, 10 Cal.3d 665, 672 (1974).  Wells Fargo argues that it did not actually promise to postpone any trustee's sale, that Plaintiff did not detrimentally rely on any alleged promise, and that Plaintiff did not sustain a legally cognizable injury as a result of any purported reliance.  (Mot. at 12–14.)

### 1.   Promise

Plaintiff's FAC fails to allege a clear and unambiguous promise.  Plaintiff alleges that beginning in February 2011, Wells Fargo phone representatives initially informed her that,

> should, and when, Plaintiff *applied* for a loan modification on Plaintiff's home with [Wells Fargo] under the United States Government's HAMP (Home Affordable Mortgage Program), all foreclosure proceedings would be suspended from the *time of application* throughout the entire duration of the parties's loan modification process, including, but not limited to, during a three-month probationary lower payment period, and beyond, into permanent loan modification *should it be granted*.

(FAC ¶ 126 (emphasis added).)  From these allegations, it is ambiguous whether Plaintiff contends Wells Fargo promised her that foreclosure proceedings would be suspended at the time she *applied* for the Home Affordable Mortgage Program ("HAMP"), or whether

she contends Wells Fargo promised her that foreclosure proceedings would be suspended *if she was granted* a permanent loan modification.

Defendant argues that by Plaintiff's own admission, being *approved* for the loan modification was a condition precedent to suspension of foreclosure proceedings. (Wells Fargo Mot. at 9–10, Wells Fargo Reply at 7.)  In support of this position, Defendant points to Plaintiff's allegation that she was told on May 27, 2011, approximately three months after the above-quoted communication, that she "could either beg for time to close on the land sale and reinstate the mortgage as is, or gamble on the off chance of a loan modification coming through before the Trustee Sale date less than two weeks away, an unlikely event to be sure, in which case only other eventuality [sic] the sale date could be postponed." (FAC ¶ 95.)  At the very least, this allegation only further confuses what Plaintiff contends.

Read together, Plaintiff's allegations do not plead a clear and unambiguous promise, as Plaintiff's contentions themselves are unclear and ambiguous.  For this basis alone, Plaintiff's promissory estoppel claim is insufficiently pleaded.

### 2. Injury

Even if the Court read Plaintiff's FAC liberally enough to construe Plaintiff's FAC as alleging a clear and unambiguous promise, Plaintiff nevertheless fails to allege any legally cognizable injury in reliance on Wells Fargo's purported promise.  Plaintiff alleges that she incurred costs to improve the vacant 004 Lot, which she intended to sell in order to cure her default in reliance on Wells Fargo's promise that it would not foreclose during the loan modification process.  (FAC ¶ 131.)  Plaintiff also contends that she abstained from attempts to immediately halt foreclosure by other unspecified means in reliance on Wells Fargo's promise.  (*Id.* at 132.)

"Detrimental reliance is an essential feature of promissory estoppel." *Beck v. Wells Fargo Home Mortg., N.A.*, No. 10-cv-2150 BEN (NLS), 2010 WL 5340563, at *2 (S.D. Cal. Dec. 10, 2010) (quoting *Healy v. Brewster*, 59 Cal. 2d 455, 463 (1963)) (finding no detrimental reliance where the plaintiff was already required to make the payment to

defendant).  Detrimental reliance requires a showing that plaintiff has undertaken a sufficient change of position in reliance on defendant's promise. *Cf. Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010) (analyzing promissory estoppel as an exception to the statute of frauds).

First, Plaintiff's allegation that absent Wells Fargo's promise to suspend foreclosure proceedings during the loan modification application process—to the extent that is what Plaintiff intends to allege—she might have sold an adjacent vacant lot to cure her default is unavailing where the Notice of Default expressly incorporated the Deed of Trust, which encumbers the vacant lot as well. Thus, to the extent that Plaintiff's purported promissory estoppel claim rests on damages arising from her failure to sell the vacant lot, such a claim cannot succeed.

Second, Plaintiff's allegation that she abstained from other means of foreclosure avoidance is equally unavailing.  In a factually similar case, a California district court held that a promissory estoppel claim was sufficient to survive a motion to dismiss where the plaintiff relied on the bank's promise to postpone foreclosure by abstaining from foreclosure avoidance options. *Chang v. Wachovia Mortgage, N.A*, No. C–11–1951 SC, 2011 WL 2940717, at *4 (N.D. Cal. July 21, 2011).  There, plaintiff alleged that defendants told her they would not proceed with a foreclosure sale so long as her loan modification negotiations continued. *Id.*  Relying on the promises by defendants, the plaintiff did not challenge the foreclosure sale, seek alternative funding, or pursue a short sale. *Id.*  As a result, plaintiff's residence was sold, which plaintiff alleged resulted in the damage of lost equity—a tangible injury—and ultimately eviction. *Id.*

Here, Plaintiff's reliance on Wells Fargo's alleged promise has not resulted in a tangible injury, as the foreclosure sale has been postponed and the trustee's sale is still pending.  (FAC ¶¶ 58, 60.)  Thus, unlike the plaintiff in *Chang*, Plaintiff here has not yet been injured by her failure to engage in other means to avoid foreclosure.  Accordingly, the Court **GRANTS** Wells Fargo's Motion with respect to Plaintiff's first claim for promissory estoppel.

**B.    PLAINTIFF'S FOURTH AND FIFTH CLAIMS FOR VIOLATION OF THE RFDCPA**

Plaintiff's fourth and fifth claims collectively seek relief from Wells Fargo for misrepresentations, false representation, deceptive means, and unfair collection practices under the RFDCPA in relation to Wells Fargo's alleged promise to forego foreclosure proceedings pending Plaintiff's loan modification process.[4]

The RFDCPA provides that, with limited exceptions, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the federal Fair Debt Collection Practices Act ("FDCPA"). Cal. Civ. Code § 1788.17. The RFDCPA specifically incorporates certain provisions of the FDCPA, including 15 U.S.C. § 1692e, which prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.*

To be liable under the RFDCPA a defendant must fall under its definition of "debt collector." *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008). A "debt collector" under the RFDCPA is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). "While the Ninth Circuit has not yet answered this precise question, numerous courts—both in this district and beyond—agree that an entity which forecloses on a property pursuant to a deed of trust is not a 'debt collector' within the meaning of the FDCPA, so long as it is clear that the entity obtained its interest prior to default." *Zhuravlev v. BAC Home Loans Servicing*, No. C 10-2165 RS, 2010 WL 2873253, at *2 (N.D. Cal. July 20, 2010). Moreover, it is settled among California federal district courts that "foreclosing on a deed of trust does not invoke the statutory protections of the RFDCPA" at all. *Jensen v. Quality Loan Service Corp.*, 702 F. Supp.

---

[4]Plaintiff's fifth claim, as styled, purports to allege causes of action under both the RFDCPA and the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f. However, the body of Plaintiff's fifth claim addresses only violations of the RFDCPA. (*See* FAC ¶ 160.) In addition, Plaintiff concedes in her Opposition to Wells Fargo's Motion to Dismiss that she brought claims pursuant only to the RFDCPA. (Opp'n to Wells Fargo Mot. at 31.) Accordingly, the Court does not consider the applicability of the FDCPA to Plaintiff's fifth claim.

2d 1183, 1200 (E.D. Cal. 2010) (quoting *Collins v. Power Default Servs., Inc.*, No. 09–4838 SC, 2010 WL 234902, *3 (N.D. Cal. Jan.14, 2010) (collecting cases)).

At the outset, the Court notes that Plaintiff has failed to indicate which specific sections of the RFDCPA have been allegedly violated, and relies instead on Articles 2.6 and 2.7 "of The Rosenthal Act Fair Debt Collections Statutes of the State of California." (FAC ¶¶ 160, 169.)  This is insufficient.  Plaintiff must base her RFDCPA claims on identifiable sections of the RFDCPA as contained in the California Civil Code.

In addition, the allegations in Plaintiff's complaint make it clear that Wells Fargo obtained its interest in Plaintiff's loan prior to default.  Therefore, Wells Fargo does not qualify as a "debt collector" under the RFDCPA.  Further, the Court doubts that Plaintiff could allege any facts to bring Wells Fargo's actions within the ambit of the RFDCPA in light of the prevailing caselaw.  Pursuant to caselaw, therefore, it appears that Plaintiff cannot plead that Wells Fargo is a "debt collector" under the RFDCPA, nor that Wells Fargo's actions invoke the statutory protections of the RFDCPA.  Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiff's fourth and fifth claims for violation of the RFDCPA.

## C.    PLAINTIFF'S FRAUD CLAIMS

Plaintiff's second, third, eighth, and ninth claims all sound in fraud.  Federal Rule of Civil Procedure 9(b) requires a party asserting a fraud claim to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Such allegations must enable the defendant to "prepare an adequate answer." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986); *Bosse v. Crowell Collier & MacMillan*, 565 F.2d 602, 611 (9th Cir. 1977); *Walling v. Beverly Enter.*, 476 F.2d 393, 397 (9th Cir. 1973).  In that regard, proper identification of the circumstances entails "specif[ication of] such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  Moreover, a fraud claim involving a corporate defendant "must 'allege the names of the persons who made the allegedly fraudulent representations, their authority

to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" *Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1065 (2010) (citing *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991)). Finally, under California law, to allege a claim of fraud, Plaintiff must show: (1) a misrepresentation of fact; (2) defendant's knowledge of the representation's falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Clark v. Countrywide Home Loans, Inc.*, 732 F. Supp. 2d 1038, 1044 (E.D. Cal. 2010) (citing *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003)). Defendant's knowledge, intent, and other subjective states of mind may, however, be alleged generally. Fed. R. Civ. P. 9(b).

### 1.   Plaintiff's Second Claim for Promissory Fraud and Third Claim for Fraudulent Misrepresentation

Plaintiff's second and third claims contend that Wells Fargo defrauded Plaintiff by representing that it would suspend all foreclosure procedures during the entire duration of the loan modification process. (FAC ¶ 142.) Further, Plaintiff alleges that Wells Fargo did not suspend all foreclosure procedures. (FAC ¶ 57.) The gravamen of Plaintiff's claim is that defendants made promises about curing Plaintiff's default, reinstating her loan, and delaying the foreclosure sale of the Property without intending to adhere to them. As it does with respect to Plaintiff's promissory estoppel claim, Wells Fargo argues that it did not make any false representation or misrepresentation, that Plaintiff did not sustain any damage or injury because foreclosure proceedings have been postponed, and that Plaintiff did not reasonably rely on the alleged oral representations because it is unreasonable to rely on an unenforceable promise. (Wells Fargo Mot. at 11–14.)

As a threshold matter, the Court notes that Plaintiff's second and third claims allege fraud solely against Wells Fargo, a corporate defendant. However, despite pages of detailed notes regarding to whom Plaintiff spoke and what was said in relation to Wells Fargo's alleged promise to postpone foreclosure during the loan modification process

(FAC ¶¶ 42–59), Plaintiff's FAC fails to allege that any of the people she spoke with had any authority to act on Wells Fargo's behalf.  Plaintiff's fraud claims against Wells Fargo therefore fail to meet Rule 9(b)'s heightened pleading standard for corporate defendants.

Further, Plaintiff has failed to allege with particularity any injury she sustained as a result of her reliance on Wells Fargo's promise.  "A fraudulent misrepresentation is not actionable unless plaintiff's conduct in reliance thereon caused the loss for which plaintiff seeks damages." *Tatola v. HSBCS Bank USA*, No. C–11–3994 MMC, 2011 WL 5025072 (N.D. Cal. October 21, 2011) (citing *Bezaire v. Fidelity & Deposit Co.*, 12 Cal.App.3d 888, 892–93, 91 Cal.Rptr. 142 (1970)).  As Wells Fargo correctly notes, Plaintiff fails to allege she incurred any injury by relying on a false or misleading statement made in connection with an attempt to foreclose on the property identified in the DOT.  Accordingly, because Plaintiff fails to allege Wells Fargo's purported representatives' authority to speak on Wells Fargo's behalf or that she suffered any injury in reliance on Wells Fargo's alleged promise to postpone foreclosure during the loan modification process, the Court **GRANTS** Wells Fargo's Motion with respect to Plaintiff's second and third claims.

### 2. Plaintiff's Eighth and Ninth Claims for Fraud and Misrepresentation, and Conspiracy

Plaintiff appears to premise her eighth claim on violations of 18 U.S.C. §§ 1001, 1341, and 1349 and the FDCPA, 15 U.S.C. § 1692e.  Plaintiff, as a private litigant, does not have standing to bring her claims under 18 U.S.C. §§ 1001, 1341, and 1349.  In addition, Plaintiff concedes in her Opposition to LSI's and Wells Fargo's Motions to Dismiss that she does not intend to bring claims under the FDCPA.  (Opp'n to Wells Fargo Mot. at 31; Opp'n to LSI Mot. at 13.)

In addition, Plaintiff appears to style the ninth cause of action again on a RFDCPA violation, citing "Article 2.7 and Article 2.6 of the Fair Debt Collection Statutes of the State of California Department of Consumer Affairs."  As discussed above, this is insufficient.  Plaintiff must base her RFDCPA claims on identifiable sections of the

RFDCPA as contained in the California Civil Code.  Moreover, for the reasons discussed above, Plaintiff fails to state a valid claim under the RFDCPA.

Alternatively, Plaintiff appears to premise her eighth and ninth claims on common law fraud.  These claims collectively allege that Wells Fargo, NDeX, LSI, and But falsely represented in Plaintiff's Notice of Default that Plaintiff had made no mortgage payments after July 1, 2010, when she had in fact made various payments amounting to $9,026.01 between July 1, 2010, and November 16, 2010.  (FAC ¶¶ 207, 218.)  Plaintiff contends that these Defendants' false statements "were such that it was reasonably foreseeable that Plaintiff would suffer great economic and emotional harm."  (FAC ¶¶ 206, 219.)  According to Plaintiff, this harm includes: "hampered ability to rectify foreclosure, legal costs, loss of time, loss of reputation, undue injury to Plaintiff's credit rating, invasion of privacy through constant listing of Plaintiff's home for sale on the Internet and elsewhere, and great emotional distress" (FAC ¶¶ 211, 220, 221).

As with her second and third claims, Plaintiff fails to state her eighth claim for fraud with sufficient particularity to satisfy Rule 9(b)'s heightened pleading standards.  While Plaintiff alleges that Wells Fargo, NDeX, LSI, and But made misrepresentations to her regarding the number and amount of loan payments she had made on her mortgage and that she suffered specific injuries as a result, she fails to state any causal connection between these Defendants' misrepresentations and her injuries.  Specifically, Plaintiff does not contend that she relied on these Defendants' purported misrepresentations, much less how any such reliance could have caused her "hampered ability to rectify foreclosure" and other specified injuries.

Moreover, even had Plaintiff alleged every element of her fraud claim with particularity, other facts in Plaintiff's FAC appear to contradict the possibility that Wells Fargo, NDeX, LSI, and But's alleged misrepresentations caused many, if any, of her injuries.  Plaintiff alleges that she paid $700 on her mortgage in August 2010 and $550 in November 2010.  (FAC ¶ 99.)  However, Plaintiff also alleges that she had *fixed rate* mortgage payments of $1,884.38 per month.  (FAC ¶ 102.)  Plaintiff's Notice of Default

14

was dated December 30, 2010.  (FAC ¶ 99.)  Thus, even had Wells Fargo properly credited the mortgage payments she made from July 2010 to November 2010, some of the payments Plaintiff made during that time fell short of her required monthly mortgage payments.  As a result, Plaintiff still would have been in default in December 2010 absent any alleged wrongdoing on Wells Fargo's part.  Nevertheless, the Court **GRANTS** Defendants' Motions with respect to Plaintiff's eighth claim with leave to amend.

### 3.    Plaintiff's Eleventh Claim for Fraud

Plaintiff's eleventh claim alleges fraud against Wells Fargo, SLS, Doza, and Robertson.  Plaintiff contends that the March 8, 2005 ADOT transferring the beneficial interest in Plaintiff's DOT from GE Capital to Wells Fargo was fraudulently executed, as it was signed by Doza on behalf of GE Capital while Doza was an employee of SLS. (FAC ¶¶ 232–36.)  Defendants argue that this claim is time-barred and fails to meet Rule 9(b)'s heightened pleading standard.

Under California law, a fraud claim must be brought within three years of the date the plaintiff could have discovered the fraud through the exercise of reasonable diligence. Cal. Civil Code § 338(d); *e.g.*, *Sun'n Sand, Inc. v. United Calif. Bank*, 21 Cal. 3d 671, 701 (1978).  "To invoke the delayed discovery rule, Plaintiff must 'specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'"  *Howl v. Bank of Am., N.A.*, No. C 11–0887 CW, 2011 WL 3610745, at *2 (N.D. Cal. Aug. 17, 2011) (quoting *E-Fab, Inc. v. Accountants, Inc. Servs.,* 153 Cal. App. 4th 1308, 1324 (2007)).

Here, Plaintiff alleges that the ADOT assigning Plaintiff's DOT to Wells Fargo was "executed on March 5, 2005 [sic], and filed with the Registrar-Recorder of Los Angeles County, California on April 6, 2005."  (FAC ¶ 229.)  Plaintiff's initial Complaint was not filed in this action until June 8, 2011 (Dkt. No. 1)—over six years after the allegedly fraudulent execution.  While Plaintiff's Opposition to SLS's Motion to Dismiss expounds upon the circumstances contributing to her inability to make earlier discovery of Defendants' fraudulent conduct, the face of Plaintiff's FAC is devoid of any such

contentions.   Plaintiff's FAC therefore fails to plead sufficient facts to support an extension of the three-year statute of limitations for fraud pursuant to delayed discovery of Defendants' alleged fraud.

Plaintiff has also failed to support her eleventh claim for fraud with sufficient factual specificity to satisfy the heightened pleading requirements of Rule 9(b) as set forth above.  The crux of Plaintiff's argument in this claim is that the ADOT was executed by Doza on behalf of GE Capital while Doza was an employee of SLS.  Nowhere in Plaintiff's FAC, however, does Plaintiff aver that Doza was unauthorized by GE Capital to execute the ADOT on GE Capital's behalf as GE Capital's agent.  In addition, Plaintiff fails to allege justifiable reliance or resulting damage.   Accordingly, the Court **DISMISSES** Plaintiff's eleventh claim for fraud without prejudice.

### 4.   Plaintiff's Twelfth Claim for Fraud and False or Misleading Representations

Finally, Plaintiff alleges that Wells Fargo fraudulently collected monthly mortgage payments from her on or before January 1, 2002, at least three years and three months before Wells Fargo came into ownership of Plaintiff's note pursuant to the May 28, 2005 ADOT.  (FAC ¶¶ 256–58.)  Wells Fargo contends that Plaintiff has failed to establish that Wells Fargo falsely represented its capacity to collect Plaintiff's loan payments because the DOT expressly permitted the lender/beneficiary to appoint a loan servicer to collect payments on its behalf, and Plaintiff fails to allege that Wells Fargo was unauthorized to service Plaintiff's mortgage prior to the execution of the May 28, 2005 ADOT.  (Mot. at 11.)   The Court agrees.  Because Plaintiff's does not allege that Wells Fargo was unauthorized to service Plaintiff's mortgage prior to May 28, 2005, or that Wells Fargo failed to apply Plaintiff's loan payments to her mortgage appropriately, Plaintiff's twelfth claim fails to state a claim under Rule 9(b).  Accordingly, the Court **GRANTS** Wells Fargo's Motion with respect to Plaintiff's twelfth claim with leave to amend.

### D.   SIXTH CLAIM FOR CONSPIRACY AND VIOLATION OF CAL. CIVIL CODE SECTION 2924(a)(1)

Plaintiff's sixth claim seeks to hold Wells Fargo, NDeX, But, and LSI liable for conspiring to foreclose on Plaintiff's Property without sufficiently adhering to California non-judicial foreclosure process.  (FAC ¶ 169.)  Specifically, Plaintiff contends that the Notice of Default refers to only one of Plaintiff's two lots—the 001 Lot)—but that the Notice of Trustee's Sale indicated Defendants' intent to sell both of Plaintiff's lots on the Property—the 001 Lot *and* the 004 Lot. (FACC ¶ 70.)  However, Plaintiff's Notice of Default is in compliance with the requirements of California Civil Code section 2924, as it lists the DOT by instrument number. *See* Cal. Civ. Code § 2924(a)(1)(A). Accordingly, the Notice of Default is statutorily sufficient.

Because nonjudicial foreclosure "is a drastic sanction and a draconian remedy, the statutory requirements must be strictly complied with . . . ." *Ung v. Koehler*, 135 Cal. App. 4th 186, 202 (2005) (internal quotations and citations omitted). Section 2924 provides, in relevant part, that a notice of default shall include a

> statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property.

Cal. Civ. Code § 2924(a)(1)(A). Here, the Notice of Default includes the instrument number of the Deed of Trust.  (Wells Fargo's RJN, Exh. E (referencing Plaintiff's Deed of Trust as "Recorded on 05/29/1998 as Instrument No. 98 909123").)  Accordingly, the Notice of Default, on its face, is not statutorily deficient.

Because the DOT was identified in the Notice of Default by instrument number in compliance with section 2924, Plaintiff was on notice that she had defaulted on her obligations under the DOT, which encumbered both lots.  Because Plaintiff could plead no set of facts to establish the contrary, Plaintiff's sixth claim for violation of California Civil Code section 2924(a)(1) is **DISMISSED WITH PREJUDICE**.

### E.   PLAINTIFF'S SEVENTH CLAIM FOR NEGLIGENCE

Plaintiff's seventh claim that LSI, Juarez, and Boswell were negligent "in their preparation of Defendants Wells Fargo and NDeX West's *Substitution of Trustee*

document." (FAC ¶ 180 (emphasis added).) LSI contends that "Defendants' actions, including the execution and recording of the *notice of default* are privileged" under California Civil Code sections 47(c) and 2924(d)(1). (LSI Opp'n at 9 (emphasis added).) LSI apparently failed to read Plaintiff's FAC with adequate care, as the contentions in Plaintiff's seventh claim pertain Defendants' execution of Plaintiff's Substitution of Trustee, not the Notice of Default. California Civil Code sections 2924(d)(1) does not address the execution of a substitution of trustee and thus has no bearing on Plaintiff's seventh claim. Accordingly, the Court **DENIES** the LSI Defendants' Motion with respect to Plaintiff's seventh claim for negligence.[5]

### F.    TENTH CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiff's tenth claim alleges that in committing all of the aforementioned acts, Defendants breached their duties to use due care, which resulted in Plaintiff's suffering reasonably foreseeable emotional harm. (FAC ¶¶ 225–26.) Plaintiff contends that this emotional harm manifested itself in "lost weight [and] lost sleep to the point [of] insomnia." (FAC ¶ 225.) Defendants contend that they did not owe Plaintiff a duty of care.

There is no independent tort of negligent infliction of emotional distress under California law. *Karimi v. GMAC Mortg.*, No. 11-CV-00926-LHK, 2011 WL 3360017, at *3 (N.D. Cal. Aug. 2, 2011) (quoting *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 818 (2006)). Rather, "[n]egligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." *Griffith v. Bank of Am., N.A.,* No. CV 11-5867 PA (FFMx), 2011 WL 6849048, at * 9 (C.D. Cal. Dec. 13, 2011) (quoting *Huggins v. Longs Drug Stores Cal., Inc.*, 6 Cal. 4th 124, 129 (1993)).

---

[5] As noted, Juarez and Boswell joined in Wells Fargo's Motion to Dismiss. (Dkt. No. 34.) However, Wells Fargo's Motion does not address Plaintiff's seventh claim. Moreover, while the signature block on LSI's Motion indicates that LSI's counsel also represents Juarez and Boswell, LSI's Notice of Motion represents that LSI and But were the only moving parties in the LSI Defendants' Motion. Accordingly, the Court does not construe Juarez or Boswell as having moved to dismiss Plaintiff's seventh claim for negligence.

"The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Savs. & Loan Ass'n*, 231 Cal.App.3d 1089, 1095 (1991). "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 481 (1996). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Castaneda v. Saxon Mortg. Servs., Inc.*, 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009) (quoting *Vasquez v. Residential Invs., Inc.*, 118 Cal. App. 4th 269, 278 (2004)).

Plaintiff's tenth claim for negligent infliction of emotional distress claims that Defendants "negligently breached their . . . duties to use due care." (FAC ¶ 226.) However, Plaintiff does not contend that any Defendant owed her a duty of care in the first place. Absent an allegation that Defendants owed Plaintiff a duty of care, this Court cannot proceed to assess whether Defendants breached that duty of care, much less whether that breach caused Plaintiff the sort of severe emotional distress that is required to state a claim for negligent infliction of emotional distress. Accordingly, Defendants' Motions are **GRANTED** with respect to Plaintiff's tenth claim.

### G.   WELLS FARGO'S MOTION TO STRIKE

Because the Court grants the entirety of Wells Fargo's Motion to Dismiss, the Court **DENIES** Wells Fargo's Motion to Strike as moot.

### V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS in PART** and **DENIES in PART** Defendants' Motions to Dismiss Plaintiff's FAC. Specifically, the Court **DENIES** the LSI Defendants' Motion with respect to Plaintiff's seventh claim; therefore, Plaintiff's seventh claim for negligence survives the parties' Motions to Dismiss. The Court likewise **DENIES** Wells Fargo's Motion to Strike as moot.

The Court **GRANTS** the parties' Motions to Dismiss with respect Plaintiff's remaining claims. Plaintiff's fourth and fifth claims for violation of the RFDCPA and

Plaintiff's sixth claim for violation of California Civil Code section 2924(a)(1) are **DISMISSED WITH PREJUDICE**.

Plaintiff's first claim for promissory estoppel against Wells Fargo; second claim for promissory fraud against Wells Fargo; third claim for fraudulent misrepresentation against Wells Fargo; eighth claim for fraud against Wells Fargo, NDeX, LSI, and But; ninth claim for misrepresentation against Wells Fargo, NDeX, LSI, and But; tenth claim for negligent infliction of emotional distress against Wells Fargo, NDeX, SLS, LSI, But, Juarez, and Boswell; eleventh claim for fraud against Wells Fargo and SLS; and twelfth claim for fraud against Wells Fargo are **DISMISSED WITHOUT PREJUDICE**.  As to these claims, Plaintiff shall have twenty-one (21) days in which to amend her complaint *only* to state these claims against Defendants; Plaintiff is not, however, granted leave to name additional defendants.  Further, Plaintiff is cautioned that failure to file and serve an amended complaint within twenty-one days could lead to dismissal of her remaining claims with prejudice.

Finally, the Court advises Plaintiff that a Federal Pro Se Clinic is located in the United States Courthouse at 312 N. Spring Street, Room 525, Fifth Floor, Los Angeles, California 90012.  The clinic is open for appointments on Mondays, Wednesdays, and Fridays from 9:30 a.m to 12:00 p.m. and from 2:00 p.m. to 4:00 p.m.  The Federal Pro Se Clinic offers on-site information and guidance to individuals who are representing

///

///

///

///

///

themselves in federal civil actions.  Plaintiff is strongly encouraged to visit the clinic before filing an amended complaint.

**IT IS SO ORDERED.**

February 22, 2012

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HON. OTIS D. WRIGHT II
UNITED STATES DISTRICT JUDGE