**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVER-LEIGH B. PENNEY, | Case No. 2:11-cv-05567-ODW(MANx) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [69, 72, 73]** |
| v. | |
| WELLS FARGO BANK, NA; WELLS FARGO HOME MORTGAGE; NDEX WEST, L.L.C.; STEWART LENDER SERVICES f/k/a STEWART MORTGAGE INFORMATION; SHERRY DOZA; TIPI ROBERTSON; LSI TITLE COMPANY; MENGHONG BUT; RIC JUAREZ; KELLIE C. BOSWELL; and DOES 1–10, | |
| Defendants. | |

## I.   INTRODUCTION

Before the court are Defendants' three concurrently filed motions: (1) Defendant Wells Fargo Bank, N.A.'s[1] March 27, 2012 Motion to Dismiss the Entirety of Plaintiff Bever-Leigh B. Penney's Second Amended Complaint ("SAC") and Motion to Strike Portions of Plaintiff's SAC (Dkt. No. 69); (2) Defendant Stewart Lender Service's ("SLS") Motion to Dismiss Plaintiff's SAC (Dkt. No. 72); and (3)

---

[1] Plaintiff sued Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage, Inc.  Per Defendant, the two entities are one company.  (Wells Fargo Mot. i.)  As such, the Court refers only to Wells Fargo Bank, N.A., or simply "Wells Fargo."

1   Defendant LSI Title Company's[2] ("LSI") Motion to Dismiss Plaintiff's SAC (Dkt.

2   No. 73).   Having carefully considered the papers filed in support of and in opposition

3   to the instant Motions, the Court deems the matter appropriate for decision without

4   oral argument.  *See* Fed. R. Civ. P. 78; C. D. Cal. L. R. 7-15.

5                              **II.    FACTUAL BACKGROUND**

6          On May 19, 1998, Plaintiff obtained a fixed-rate mortgage loan for $269,500.00

7   from Di Tech Funding Corporation, which was secured by a deed of trust ("DOT")

8   encumbering the property located at 9404 Wayside Drive, Shadow Hills, California

9   91040.   (Wells Fargo's Request for Judicial Notice ("RJN"),[3] Exs. A, B.)   This

10  property includes two parcels of real property identified as APN 2549-016-001 ("001

11  Lot") and APN 2549-016-004 ("004 Lot").  (RJN Ex. B.)  In connection with the loan,

12  Plaintiff executed a promissory note ("Note") whereby she agreed to make fixed

13  payments of $1,884.38 per month.  (RJN Ex. A.)  The DOT expressly permitted the

14  lender/beneficiary to appoint a loan servicer to collect payments on its behalf.  (RJN

15  Ex. B; Mot. 18.)

16         On September 24, 1998, Di Tech executed a Corporation Assignment of Deed

17  of Trust, which assigned Plaintiff's DOT to GE Capital Mortgage Services.  (RJN Ex.

18  C.)  On March 8, 2005, GE Capital executed a second Assignment of Deed of Trust

19  ("ADOT") assigning Plaintiff's DOT to Wells Fargo.  (RJN Ex. D.)  The ADOT was

20  executed by Sherry Doza on behalf of GE Capital and filed with the Los Angeles

21

22

23  _____

[2] Defendants NDeX West, Ric Juarez, Kellie Boswell, and Menghong But join in LSI's Motion to

24  Dismiss. (Dkt. No. 73.)

[3] To the extent the Court relies on any documents not attached directly to Plaintiff's SAC, those

25  documents are referenced in the SAC and are thereby incorporated by reference.  Furthermore, "[a]

    trial court may presume that public records are authentic and trustworthy," *Gilbrook v. City of*

26  *Westminster*, 177 F.3d 839, 858 (9th Cir. 1999), and thus fall within the purview of Federal Rule of

    Evidence 201.  *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  Rule 201 states that "[a]

27  judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally

    known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready

    determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

28  201(b).  Accordingly, the Court takes judicial notice of the filing dates for the documents to which it

    cites but does not take judicial notice of the facts contained therein.

County Recorder's office on April 6, 2005.  (*Id.*; SAC ¶¶ 258, 262.)  At that time,
Doza was also an employee of SLS.  (SAC Ex. *I*; SAC ¶ 250.)

Between July 1, 2010, and November 16, 2010, Plaintiff made various
mortgage payments totaling $9,026.01, including a $700.00 payment in August 2010
and a $550.00 payment in November 2010.  (SAC ¶ 52.)  As of December 29, 2010,
Plaintiff was in default on her mortgage in the amount of $15,192.28.  (RJN Ex. E.)
As a result of Plaintiff's default, a Notice of Default and Election to Sell Under Deed
of Trust was recorded on December 30, 2010, in the Los Angeles County Recorder's
Office.  (*Id.*)  The Notice of Default expressly incorporated the Deed of Trust.  (*Id.*)
Thereafter, on May 4, 2011, a Substitution of Trustee was recorded against the
Property.  (RJN Ex. D.)  Finally, a Notice of Trustee's Sale was recorded against the
Property on May 16, 2011.  (RJN Ex. G.)

Beginning in February 2011, Wells Fargo phone representatives initially
informed Plaintiff that "no foreclosure proceedings would take place on Plaintiff's
property, starting from the time Defendant Wells Fargo received an application from
Plaintiff for a U.S. Government HAMP (Home Affordable Mortgage Program) loan
modification, and continuing throughout the entire period of the loan modification
process."  (SAC ¶ 59.)

On March 24, 2011, Plaintiff received a letter from Wells Fargo informing her
that "there is a program available that may help you.  If you qualify under the federal
government's Home Affordable Modification program and comply with the terms of
the Home Affordable Modification Program Trial Period Plan, we will modify your
mortgage loan and you can avoid foreclosure."  (SAC Ex. M.)  In addition, the letter
advised Plaintiff:

> If you meet the eligibility criteria, you will be offered a Trial Period Plan.
> The monthly trial period payments will be based on the income
> documentation that you provide.  They will be an estimate of what your
> payment will be if we are able to modify your loan under the terms of the

program.  If you do not qualify for a loan modification, we will work
with you to explore other options available to help you keep your home
or ease your transition to a new home.  Be sure you continue making
your regular mortgage payments until you hear from us about your
eligibility for this program.   While we're reviewing your information,
your home will not be referred to foreclosure or sold at a foreclosure sale.

(*Id.*)

On February 7, 2011, Plaintiff listed the 004 Lot with a real estate agent with
the intent to sell the land in order to rectify arrearage on her mortgage.  (SAC ¶¶ 38,
71.)

On April 9, 2011, Wells Fargo sent a second letter to Plaintiff about the Home
Affordable Mortgage Program ("HAMP") program.  (SAC Ex. N.)

On May 25, 2011, Wells Fargo's Loss Mitigation Department informed
Plaintiff that the Trustee sale had been scheduled for June 9, 2011.  (SAC ¶ 72.)  To
date, the foreclosure sale has been postponed multiple times, and the trustee's sale is
still pending.  (SAC ¶ 33.)

As a result of these facts and contentions, Plaintiff filed a Complaint on June 8,
2011, in Los Angeles County Superior Court against Defendants NDeX West, LLC;
Wells Fargo Bank N.A.; and Wells Fargo Bank Home Mortgage, Inc. alleging, *inter
alia*, claims for fraud, unfair debt collection practices, and wrongful foreclosure.
(Dkt. No. 1.)  On July 6, 2011, Wells Fargo removed the case to this Court based on
diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (*Id.*)  On October 18, 2011, this
Court granted Plaintiff leave to amend her Complaint.  (Dkt. No. 29.)  The same day,
Plaintiff filed her First Amended Complaint ("FAC"), which included several new
claims and Defendants. (Dkt. No. 30.)  Defendants Wells Fargo, SLS, and LSI each
filed a Motion to Dismiss Plaintiff's FAC.  (Dkt. Nos. 32, 47, 48.)

On March 27, 2012, this Court granted in part and denied in part Defendants'
Motions to Dismiss.  (Dkt. No. 63.)  This Court dismissed with prejudice Plaintiff's

fourth and fifth claims for violation of the RFDCPA and Plaintiff's sixth claim for violation of California Civil Code section 2924(a)(1).  (*Id*. at 18–19.)   The Court dismissed Plaintiff's remaining claims without prejudice and granted Plaintiff leave to amend her complaint *only* to state *these* claims against Defendants.  (*Id.* at 19.)

Plaintiff's SAC contains a total of 11 claims, styled as follows:

(1) promissory estoppel in violation of Restatement (Second) of Contracts section 90 by Wells Fargo;

(2) promissory fraud in violation of Restatement (Second) of Torts by Wells Fargo;

(3) fraudulent misrepresentation in violation of Restatement (Second) of Torts section 526 by Wells Fargo;

(4) false or misleading representation in violation of 15 U.S.C. § 1692E and fraud in violation of California Civil Code section 1572 by Wells Fargo;

(5) false or misleading representation in violation of 15 U.S.C. § 1692E and negligent misrepresentation by Wells Fargo, NDeX, LSI, and But;

(6) unfair practices under California Business and Professions Code section 17200, et seq. by all defendants;

(7) negligence under Restatement (Second) of Torts section 282 by LSI Juarez, and Boswell;

(8) fraud, misrepresentation, false or misleading representations in violation of 15 U.S.C. § 1692E and conspiracy in violation of the Restatement (Second) of Torts section 526 by Wells Fargo, NDeX, LSI, and But;

(9) negligent infliction of emotional distress by Wells Fargo;

(10) fraud in violation Restatement (Second) of Torts section 526 by Wells Fargo, SLS, Doza and Robertson;

(11) fraud in violation Restatement (Second) of Torts section 526 and false or misleading representation by Wells Fargo.

1       Defendants now collectively move to dismiss Plaintiff's SAC in its entirety.

2  The Court addresses the parties' arguments below.

3                 **III.    LEGAL STANDARD**

4       Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal

5  theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

6  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "To survive a

7  motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint

8  generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)."

9  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires "a short and

10  plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

11  Civ. P. 8(a)(2). For a complaint to sufficiently state a claim, its "[f]actual allegations

12  must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*

13  *v. Twombly*, 550 U.S. 544, 555 (2007). While specific facts are not necessary so long

14  as the complaint gives the defendant fair notice of the claim and the grounds upon

15  which the claim rests, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), a complaint must

16  nevertheless "contain sufficient factual matter, accepted as true, to state a claim to

17  relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

18  (internal quotation marks omitted).

19       *Iqbal*'s "plausibility standard" is "not akin to a probability requirement, but it

20  asks for more than a sheer possibility that a defendant has acted unlawfully. Where a

21  complaint pleads facts that are merely consistent with a defendant's liability, it stops

22  short of the line between possibility and plausibility of entitlement of relief." *Id.*

23  (internal citation and quotation marks omitted). "A pleading that offers 'labels and

24  conclusions' or 'a formulaic recitation of the elements of a cause of action will not

25  do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). The determination whether a complaint

26  satisfies the plausibility standard is a "context-specific task that requires the reviewing

27  court to draw on its judicial experience and common sense." *Id.* at 679.

28

When considering a Rule 12(b)(6) motion, a court is generally limited to considering material within the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (citing *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.   DISCUSSION

The Court begins its analysis by addressing Plaintiff's first claim for promissory estoppel. The Court turns next to Plaintiff's negligence claims. The Court then proceeds to consider Plaintiff's various fraud claims together, followed by Plaintiff's claim for violation of California Business and Professions Code section 17200. The Court concludes by addressing Plaintiff's RESPA claim.

### A.   FIRST CLAIM FOR PROMISSORY ESTOPPEL AGAINST WELLS FARGO

To state a claim for promissory etoppel, Plaintiff must allege (1) a promise clear and unambiguous in its terms; (2) reliance by Plaintiff on that promise; (3) reliance that was both reasonable and foreseeable; and (4) damages resulting from her reliance. *Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co., Inc.,* 688 F. Supp. 2d 940, 953 (N.D. Cal. 2010); *Aceves v. U.S. Bank, N.A.* 196 Cal. App. 4th 218, 225 (2011). "[T]he doctrine of promissory estoppel is used to provide a substitute for the

consideration [that] ordinarily is required to create an enforceable promise." *Raedeke v. Gibraltar Sav. & Loan Ass'n*, 10 Cal. 3d 665, 672 (1974).

Wells Fargo contends that it did not actually promise to postpone any trustee's sale and that Plaintiff neither detrimentally relied on the alleged promise nor Plaintiff did not sustained a legally cognizable injury as a result of any purported reliance. (Wells Fargo Mot. 8–10.)  The Court rejects both contentions.

### 1.   Promise

Wells Fargo argues that Plaintiff's SAC once again fails to allege a clear and unambiguous promise.  According to Plaintiff, Wells Fargo

> explicitly made a promise to Plaintiff . . . , through oral and written representations, that no foreclosure proceedings would take place on Plaintiff's property, starting from the time Defendant Wells Fargo received an application from Plaintiff for a U.S. Government HAMP (Home Affordable Mortgage Program) loan modification, and continuing throughout the entire period of the loan modification process. Defendant's phone representatives repeatedly promised Plaintiff that, while Defendant was reviewing Plaintiff's information, her home would not be referred to foreclosure or sold at a foreclosure sale.

(SAC ¶ 59.)  In addition, Plaintiff attaches to her SAC two letters addressed to her from Wells Fargo to corroborate her allegations.  (SAC Exs. M, N.)  Both letters clearly state, "While we're reviewing your information, your home will not be referred to foreclosure or sold at a foreclosure sale."  (SAC Exs. M, N.)

Wells Fargo disingenuously attempts to point to other allegations in Plaintiff's Complaint that Wells Fargo contends supports Plaintiff's admission "that Wells Fargo did not actually promise to postpone any trustee's sale of the Property and instead notified Plaintiff that foreclosure would be postponed on the condition that she qualify for a loan modification before the sale."  (Wells Fargo Mot. 8 (citing SAC ¶ 17, at 17).)  But Wells Fargo's position is directly contradicted by the text of the letters

Plaintiff submitted with her SAC.  While Plaintiff's SAC is not always a model of clarity, the Court must construe Plaintiff's SAC liberally, as Plaintiff is proceeding pro se in this action.  *Erickson*, 551 U.S. at 94.  Construing the SAC liberally, the Court finds that Plaintiff has alleged a clear and unambiguous promise.

### 2.   *Damages*

Plaintiff asserts that in reliance on Wells Fargo's promise that it would not foreclose during the loan modification process, she has accumulated tangible injuries in the form of various fees, legal costs, lost time and wages, and loss of privacy. (SAC ¶¶ 75(a)–(i).)  Moreover, Plaintiff suggests that in reliance on Wells Fargo's promise she abstained from attempts to halt her foreclosure by other means, including selling her entire property, obtaining a second mortgage, or finding immediate sources of funding elsewhere.  (*Id.* at 60, 64.)  Wells Fargo argues that Plaintiff's SAC "fails to establish that she sustained any injury as Plaintiff does not (and cannot) allege that a trustee's sale of the Property has occurred."  (Wells Fargo Mot. 10.)

"Detrimental reliance is an essential feature of promissory estoppel."  *Beck v. Wells Fargo Home Mortg., N.A.*, No. 10-cv-2150 BEN (NLS), 2010 U.S. Dist. LEXIS 131006, at *2 (S.D. Cal. Dec. 10, 2010) (quoting *Healy v. Brewster*, 59 Cal. 2d 455, 463 (1963) (finding no detrimental reliance where the plaintiff was already required to make the payment to defendant)).  Detrimental reliance requires a showing that plaintiff has undertaken a sufficient change of position in reliance on defendant's promise.  *Cf. Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010) (analyzing promissory estoppel as an exception to the statute of frauds).

The Court notes initially that any injuries Plaintiff contends she suffered as a result of filing this action are not legally cognizable injuries.  *Cf. Izenberg v. ETS Servs.*, LLC, 598 F. Supp. 2d 1193, 1205 (C.D. Cal. 2008) ("[T]he cost of filing a RICO action does not satisfy the concrete financial injury requirement.")  Allowing a plaintiff to claim legal costs (or other injuries incidental to filing an action) as an injury would render the injury requirement completely meaningless.  Therefore,

1    Plaintiff's claims that she "had to file this lawsuit and prosecute it in pro se, and now

2    continues to suffer a myriad of legal expenses" are unavailing.

3         The Court finds Plaintiff's allegation that she abstained from other means of

4    foreclosure avoidance similarly unavailing.   In a factually similar case, a California

5    district court held that a promissory estoppel claim was sufficient to survive a motion

6    to dismiss where the plaintiff relied on the bank's promise to postpone foreclosure

7    proceedings by abstaining from foreclosure avoidance options.  *Chang v. Wachovia*

8    *Mortg., N.A.*, No. C–11–1951 SC, 2011 WL 2940717, at *5 (N.D. Cal. July 21, 2011).

9    There, the plaintiff alleged that defendants told her they would not proceed with a

10   foreclosure sale so long as her loan modification negotiations continued.  *Id.*  Relying

11   on the promises by defendants, the plaintiff did not challenge the foreclosure sale,

12   seek alternative funding, or pursue a short sale.  *Id.*  As a result, plaintiff's residence

13   was sold, which plaintiff alleged resulted in the damage of lost equity—a tangible

14   injury—and ultimately eviction.  *Id.*

15        Unlike the plaintiff in *Chang*, Plaintiff here as not yet been injured by her

16   failure to engage in other means to avoid foreclosure.  As Wells Fargo argues, to the

17   extent Plaintiff's damages rest on the promise not to foreclose, the trustee's sale of the

18   Property has not occurred in the 11 months since Plaintiff commenced this action.

19   (Wells Fargo Mot. 10; SAC ¶ 24.)  Further, to the extent Plaintiff's damages rest on

20   the promise not to foreclose during the evaluation of her HAMP application, her

21   HAMP application has now been denied.  (SAC ¶ 75(g); Dkt. No. 90, at 2.)

22        Plaintiff does, however, allege that "[s]everal thousands of dollars in

23   unaccounted-for fees have been applied to the principle [*sic*] of Plaintiff's alleged

24   mortgage" that continued "to accumulate to Plaintiff's detriment" as a result of Wells

25   Fargo's "misrepresentat[ion] and broken promise that Plaintiff's home would not be

26   referred to auction or sold at a foreclosure sale from the time Defendant received

27   Plaintiff's application for a HAMP loan modification going forward throughout the

28   entire loan modification process."  (SAC ¶ 75(a).)  In the aggregate, Plaintiff alleges

that she applied for a HAMP modification in reliance on Wells Fargo's promise that it would not foreclose on her home *or refer her home to foreclosure* during the loan modification process (SAC ¶ 60), that Wells Fargo broke its promise, and that as a result of Wells Fargo's broken promise, Plaintiff has incurred additional fees added to the principal of her mortgage.  The Court finds these allegations sufficient to state a claim for promissory estoppel.

Wells Fargo's Motion is therefore **DENIED** with respect to Plaintiff's first claim for promissory estoppel.

## B. SEVENTH CLAIM FOR NEGLIGENCE AND NINTH CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiff's seventh and ninth claims collectively seek relief from LSI, Juarez, Boswell and Wells Fargo for negligence and negligent infliction of emotional distress for filing false documents, fraudulently attempting foreclosure, and hindering Plaintiff's ability to cure her foreclosure.  Plaintiff's argument is contrary to law because Defendants do not owe her a duty.

### 1. Negligence

Plaintiff argues that LSI, Juarez and Boswell[4] collectively failed to use due care in executing the Substitution of Trustee document resulting in fraudulent filings with the Registrar-Recorder Office of LA County.  (SAC ¶¶ 168, 172, 220.)  Plaintiff avers that as a result of the fraudulent filings, title to her home is "clouded," and she is unaware of who has standing to foreclose.  (*Id.* ¶¶ 181, 183.)  Defendants argue they do not owe her a duty.  (Wells Fargo Mot. 20; LSI Mot. 13–14.)  The Court agrees.

"The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Savs. & Loan Ass'n.*, 231 Cal. App. 3d. 1089, 1095 (1991).  "[A]bsent a duty, the defendant's

---

[4] Plaintiff's claim is ambiguous as to whether it includes Wells Fargo and NDeX as Defendants. *Compare* SAC ¶¶ 157–158, 160 (referencing NDeX and Wells Fargo) *with* SAC at 51 (styling Plaintiff's seventh claim as one asserted against only LSI, Juarez, and Boswell)  Because Plaintiff is pro se, the Court construes her SAC broadly to include all Defendants.

care, or lack of care, is irrelevant." *Software Design & Application, Ltd. V. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 481 (1996). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Castaneda v. Saxon Mortg. Servs., Inc.*, 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009) (quoting *Vasquez v. Residential Invs., Inc.*, 118 Cal. App. 4th 269, 278 (2004)).

Plaintiff's seventh claim for negligence claims that Defendants "failed to use reasonable care, breaching their duty to do so." (SAC ¶ 172.) However, Plaintiff does not contend that any Defendant owed her a duty of care in the first place. Absent an allegation that Defendants owed Plaintiff a duty of care, this Court cannot proceed to assess whether Defendants breached that duty of care. Accordingly, Defendants' Motions are **GRANTED** with respect to Plaintiff's seventh claim.

### 2. Negligent Infliction of Emotional Distress

Plaintiff's ninth claim alleges that because Wells Fargo filed fraudulent documents, attempted to foreclose on her home, and hindered her ability to cure her default, it breached its duty to use due care, which resulted in Plaintiff's weight loss and insomnia. (SAC ¶¶ 220, 231.) Wells Fargo contends that as a financial institution, it did not owe Plaintiff a duty of care. (Wells Fargo Mot. 20.)

There is no independent tort of negligent infliction of emotional distress under California law. *Karimi v. GMAC Mortg.*, No. 11-CV-00926-LHK, 2011 U.S. Dist. LEXIS 84692, at *3 (N.D. Cal. Aug. 2, 2011) (quoting *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 124, 129 (1993))). Rather, "[n]egligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." *Griffith v. Bank of Am., N.A.*, No. CV 11-5867 PA (FFMx), 2011 U.S. Dist. LEXIS 150940, at *9 (C.D. Cal. Dec. 13 2011) (quoting *Huggins v. Longs Drug Stores Cal., Inc.*, 6 Cal. 4th 269, 278 (2004)). Moreover, barring an assumption of duty or a special relationship, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan

transaction does not exceed the scope of its conventional role as a mere lender of money." *Vann v. Aurora Loan Servs. LLC*, No. 10–CV–04736–LHK, 2011 WL 2181861, at *4 (N.D. Cal. June 3, 2011) (quoting *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991)).

No special circumstances apply here. Plaintiff fails to allege that any Defendant assumed a duty, maintained a special relationship with Plaintiff, or exceeded the scope of its conventional role as a mere lender of money. Thus, Plaintiff has failed to establish that any Defendant owed her a duty of care as a matter of law under the circumstances.

Because Wells Fargo does not owe Plaintiff a duty of care, she has failed to state a claim for negligent infliction of emotional distress. Therefore, Wells Fargo's Motion is **GRANTED** with respect to Plaintiff's ninth claim.

## C.   FRAUD CLAIMS

Plaintiff's second, third, fourth, fifth, and tenth claim each sound in fraud. Pleadings of fraud are subject to Federal Rule of Civil Procedure 9(b)'s heightened standard, which requires the pleader to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Particularity" means that averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–06 (9th Cir. 2003). Allegations under Rule 9(b) must be stated with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). The Court considers each of Plaintiff's claims in turn.

### 1.   *Second Claim for Promissory Fraud and Third Claim for Fraudulent Misrepresentations against Wells Fargo*

Plaintiff's second claim for promissory fraud and third claim for fraudulent misrepresentation largely track Plaintiff's allegations in her first claim for promissory

estoppel: Wells Fargo promised that Plaintiff's home would not be referred to foreclosure or sold at a foreclosure sale from the time Wells Fargo received Plaintiff's HAMP loan modification application; Wells Fargo did not halt the foreclosure process; and as a result, Plaintiff has suffered general damages including legal expenses, lost wages, and an increase in mortgage principal.  (SAC ¶¶ 80, 82, 89, 94, 100.)   In response, Wells Fargo argues that it did not represent or promise any postponement of the trustee's sale, Plaintiff did not rely on any representation or promise, and Plaintiff did not incur any damages.  (Wells Fargo Mot. 8–10.)

Under California law, promissory fraud is a "subspecies of the action for fraud and deceit."  *City Solutions v. Clear Channel Commc'ns, Inc.*, 365 F.3d 835, 839 (9th Cir. 2004) (quoting *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996)).  In order to bring a claim for deceit in California, Plaintiff must allege: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damage. *Agosta v. Astor*, 120 Cal. App. 4th 596, 603 (2004).  In addition, "[a] fraudulent misrepresentation is not actionable unless plaintiff's conduct in reliance thereon caused the loss for which plaintiff seeks damages."  *Tatola v. HSBC Bank USA*, No C–11–3994 MMC, 2011 U.S. Dist. LEXIS 122289 (N.D. Cal. October 21, 2011) (citing *Bezaire v. Fidelity & Deposit Co.*, 12 Cal. App. 3d 888, 892–93 (1970)).

For the reasons discussed above with respect to Plaintiff's first claim for promissory estoppel, the Court finds that Plaintiff has alleged her second and third claims with the requisite factual specificity required under Rule 9(b).  While Plaintiff does not allege the exact sum of fees added to the principal of her loan as a result of Wells Fargo's broken promise, the Court liberally construes Plaintiff's allegations in conjunction with the painstaking factual detail Plaintiff alleges in her SAC to find that Plaintiff has pleaded her second and third claims sufficiently to withstand a motion to dismiss.   Wells Fargo's Motion is therefore **DENIED** with respect to Plaintiff's second and third claims.

1        *2.      Fourth Claim for Fraudulent Misrepresentations against Wells Fargo*

Plaintiff's fourth claim alleges that the letters sent by Wells Fargo were in an effort to collect debts and included false practices in violation of the federal Fair Debt Collections Practices Act ("FDCPA") and the California state Rosenthal Fair Debt Colections Practices Act ("RFDCPA").  (SAC ¶ 120.)  Wells Fargo argues foreclosure proceedings do not constitute debt collections under the RFDCPA or under the FDCPA.[5]  (Wells Fargo Reply 9.)

The RFDCPA provides that, with limited exceptions, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the FDCPA.  Cal. Civ. Code § 1788.17.  The RFDCPA specifically incorporates certain provisions of the FDCPA, including 15 U.S.C. § 1692e, which prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  *Id.*

To be liable under the RFDCPA a defendant must fall under the RFDCPA's definition of "debt collector."  *Izenberg*, 589 F. Supp. 2d at 1199.  A "debt collector" under the FRDCPA is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection."  Cal. Civ. Code § 1788.2(c).  "While the Ninth Circit has not yet answered this precise question, numerous courts—both in this district and beyond—agree that an entity which forecloses on a property pursuant to a deed of trust is not a 'debt collector' within the meaning of the FDCPA, so long as it is clear that the entity obtained its interest prior to default."  *Zhuravlev v. BAC Home Loans Servicing, LP*, No. C 10-2165 RS, 2010

---

[5] In addition, Defendant argues that the Court has already dismissed Plaintiff's claim with prejudice for the debt collection statutes.  (Wells Fargo Mot. 19.)  In ruling on motions to dismiss Plaintiff's First Amended Complaint ("FAC"), the Court did dismiss with prejudice Plaintiff's fourth and fifth claims, which were styled in part as violations of the RFDCPA.  (Dkt. No. 63, at 11.)  However, in Plaintiff's opposition to the motion to dismiss her FAC Complaint, she conceded that she only brought claims pursuant to the RFDCPA.  (*Id.* at n.4)  Here, Plaintiff brings claims against Wells Fargo for violation of both the state and federal debt collection statutes.  Because Plaintiff is proceeding pro se and this Court did provide leave to amend, this Court will consider Plaintiff's present RFDCPA claims.

1    U.S. Dist. LEXIS 73874, at *6 (N.D. Cal. July 20, 2010).  Moreover, it is is settled
2    among federal district courts in California that "foreclosing on a deed of trust does not
3    invoke the statutory protections of the RFDCPA" at all.  *E.g.*, *Jensen v. Quality Loan*
4    *Service Corp.*, 702 F. Supp. 2d 1183, 1200 (E.D. Cal. 2010) (quoting *Collins v. Power*
5    *Default Servs., Inc.*, No. 09-4838 SC, 2010 U.S. Dist. LEXIS 3361, *3 (N.D. Cal.
6    Jan.14, 2010) (collecting cases)).

7        Plaintiff argues the *Zhuravlev* case is inapplicable here because it is unclear
8    whether Defendant obtained its interest prior to default.  (SAC ¶ 125.)  But other
9    allegations in Plaintiff's SAC make clear that Wells Fargo obtained its interest in
10   Plaintiff's loan prior to default.  Plaintiff contests the ADOT transferring interest in
11   her DOT to Wells Fargo only to the extent that she paid mortgage payments to
12   Defendant Wells Fargo "before March 8, 2005, the date Defendant Wells Fargo's
13   alleged Assignment of Deed of Trust claims to have brought Wells Fargo into
14   ownership of Plaintiff's mortgage Note."  (SAC ¶ 17(d).)  The Notice of Default,
15   however, is dated December 29, 2010—more than five years after the date Wells
16   Fargo obtained its interest in the DOT by the March 8, 2005 ADOT.  Despite
17   Plaintiff's allegations to the contrary, judicially noticeable documents therefore make
18   clear that Defendant obtained its interest prior to default.

19       Because foreclosure pursuant to a deed of trust does not constitute debt
20   collection as required by both statutes and Defendant obtained its interest prior to
21   default, Plaintiff's fourth claim fails.

22       Therefore, the Court **GRANTS** Wells Fargo's Motion with respect to this
23   claim.

24       *3.    Fifth Claim for False or Misleading Representations*

25       Plaintiff appears to premise her fifth claim on common law fraud.  Plaintiff
26   alleges that Wells Fargo, NDeX, LSI, and But falsely represented in the Notice of
27   Default that Plaintiff made no mortgage payments after July 1, 2010, when in fact she
28   made several payments amounting to $9,026.01.  (SAC ¶¶ 52, 136, 137.)  Plaintiff

avers she suffered general damages as a result.  (SAC ¶ 142.)  Wells Fargo argues the Notice of Default is correct, and even if Plaintiff's argument is taken as true, her payments are still insufficient to pay her mortgage.  (Wells Fargo Mot. 12–14.)  Defendants NdeX, LSI, and But argue that Plaintiff fails to plead her fifth claim with particularity.  (LSI Mot. 6, 9, 12.)

Plaintiff fails to state her fifth claim with sufficient particularity to satisfy Rule 9(b)'s heightened pleading standard.  Plaintiff alleges that Wells Fargo, NDeX, LSI, and But falsely represented in Plaintiff's Notice of Default that Plaintiff had made no mortgage payments after July 1, 2010, when she had in fact made various payments amounting to $9,026.01 between July 1, 2010, and November 16, 2010.  (SAC ¶ 137.).  Plaintiff fails to allege how she detrimentally relied on this representation or how such reliance caused her any injury.  Plaintiff alleges that she paid $700.00 on her mortgage in August 2010 and $550.00 in November 2010.  (SAC ¶ 52.)  However, Plaintiff also alleges that she had *fixed rate* mortgage payments of $1,884.38 per month.  (*See* SAC ¶ 55.)  Plaintiff's Notice of Default was dated December 30, 2010.  (SAC ¶ 52.)  Thus, even had Wells Fargo properly credited the mortgage payments she made from July 2010 to November 2010, some of the payments Plaintiff made during that time fell short of her required monthly mortgage payments.  As a result, Plaintiff still would have been in default in December 2010 absent any alleged wrongdoing on Wells Fargo's part.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss this claim.

### 4.    *Tenth Claim for Fraud*

Plaintiff's tenth claim alleges fraud against Wells Fargo, LSI, Doza, and Robertson.  She alleges that the preparation, execution, and filing of the Deed of Trust were fraudulent because the DOT was signed by Doza on behalf of GE Capital while Doza was an employee of SLS and, as a result, Defendants do not have legal standing to foreclose on her property.  (SAC ¶ 237; Opp'n 18.)  Defendants Wells Fargo and

1  LSI argue that this claim is time barred and fails to meet the Rule 9(b) heightened
2  pleading standard.[6]  (Wells Fargo Mot. 18; SLS Mot. 6.)  The Court agrees.

3          As a threshold matter, because Plaintiff has not identified any facts plausibly
4  supporting her theory that the Assignment to Wells Fargo was fraudulently executed,
5  the Court need not accept Plaintiff's bare conclusion of fraud.  While Plaintiff pleads
6  that "[t]he person who claimed to be the assignor, Vice President of GE Capital
7  Mortgage Services, Inc., was instead an employee of Stewart Mortgage Information,
8  the company that generated the Assignment Of Deed Of Trust document," Plaintiff
9  does not plead facts plausibly suggesting that Doza only held one job at the time or
10 somehow could not have held both positions.  Further, Plaintiff "do[es] not allege that
11 any third party has ever come forward attempting to enforce the debt, making
12 plaintiff's claim yet more implausible." *Bernardi v. JPMorgan Chase Bank, N.A.*, No.
13 C-111-04543 RMW, 2012 WL 33894, at *2 (N.D. Cal. Jan. 6, 2012).

14          In addition, because Plaintiff does not allege that she was a party to the
15 assignment, she lacks standing to challenge its validity.  *See Bleavins v. Demarest*,
16 196 Cal. App. 4th 1533, 1542 (2011) ("Someone who is not a party to a contract has
17 no standing to challenge the performance of the contract . . . ." (internal quotation
18 marks and alterations omitted)); *see also Velasco v. Sec. Nat'l Mortg. Co.*, No. 10-
19 00239 DAE KSC, 2011 WL 4899935, at *4 (D. Haw. Oct. 14, 2011) ("[A]s strangers
20 to the Assignment and without any evidence or reason to believe that they are
21 intended beneficiaries of that contract, Plaintiffs may not dispute the validity of the
22 Assignment."); *Livonia Prop. Holdings, L.L.C. v. 12840–12976 Farmington Road
23 Holdings, LLC*, 717 F. Supp. 2d 724, 737 (E.D. Mich. 2010) (holding that a plaintiff
24 who was not and is not a party to any assignments or Pooling and Servicing
25 Agreement at issue "lacks standing to challenge their validity or the parties'
26 compliance with those contracts").  Plaintiff has not adequately pleaded that any

27
28
---
[6] Doza and Robertson did not file or join in a Motion to Dismiss.

1    Defendant is without authority to enforce her debt, and thus her tenth claim must be

2    dismissed to the extent that it relies on this assertion.

3    With respect to the statute of limitations, in California a fraud claim must be

4    brought within three years of the date the plaintiff could have discovered the fraud

5    through the exercise of reasonable diligence.  Cal. Civil Code § 338(d); *e.g.*, *Sun'n*

6    *Sand, Inc. v. United Cal. Bank*, 21 Cal. 3d 671, 701 (1978). "To invoke the delayed

7    discovery rule, Plaintiff must 'specifically plead facts to show (1) the time and manner

8    of discovery and (2) the inability to have made earlier discovery despite reasonable

9    diligence.'"  *Howl v. Bank of Am., N.A.*, No. C 11-0887 CW, 2011 U.S. Dist. LEXIS

10   91698, at *2 (N.D. Cal. Aug. 17, 2011) (quoting *E-Fab, Inc. v. Accountants, Inc.*

11   *Servs.*, 153 Cal. App. 4th 1308, 1324, (2007)).  The burden is on the plaintiff to "show

12   diligence" by providing more than conclusory allegations.  *Fox v. Ethicon Endo-*

13   *Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005).

14   Here, Plaintiff alleges that the ADOT assigning Plaintiff's DOT to Wells Fargo

15   was executed on March 5, 2005, and filed with the Registrar-Recorder of Los Angeles

16   County on April 6, 2005.  (SAC ¶ 235.)  Plaintiff's initial Complaint was not filed in

17   this action until June 8, 2011 (Dkt. No. 1)—over six years after the allegedly

18   fraudulent execution.  Plaintiff avers that she did not see this information until Wells

19   Fargo filed it with its first motion to dismiss.  (SAC ¶ 236.)  She further suggests

20   Defendants concealed this information because they failed to notify her of the ADOT,

21   making her unable to discover this information.  (*Id.* at 239.)  However, Plaintiff

22   admits that the ADOT was recorded in the official records of Los Angeles County in

23   2005.  To that end, it was part of the public record.

24   Constructive notice is notice imputed by law.  *E-Fab, Inc.*, 153 Cal. App. 4th at

25   1319.  Moreover, "'under the delayed discovery rule, a cause of action accrues and the

26   statute of limitations begins to run when the plaintiff *has reason to suspect an injury*

27   *and some wrongful cause*, unless the plaintiff pleads and proves that a reasonable

28   investigation at that time would not have revealed a factual basis for *that particular*

*cause of action.*'" *Id.* at 1319 (quoting *Fox*, 35 Cal. 4th at 803).   Plaintiff was therefore on constructive notice of the ADOT when it was recorded in April 2005. Moreover, to the extent that this claim is predicated on Wells Fargo's failure to comply with RESPA statutory requirements or provide notification of the ADOT, Plaintiff had the information she needed to discover and bring an action regarding the alleged wrongs more than three years before filing suit.   Nothing in the SAC suggests that Plaintiff was prevented from comparing her loan documents or retrieving a copy from the Los Angeles County Recorder's Office any time after its recording in April 2005.   Plaintiff has therefore failed to establish that a reasonable investigation would not have revealed a factual basis for her claim of fraud.

Because Plaintiff fails to overcome the statute of limitations by the delayed discovery rule, Plaintiff's claim is time-barred.   Accordingly, LSI's and Wells Fargo's respective Motions to Dismiss are **GRANTED** with respect to Plaintiff's tenth claim.

> ### 5.      Eighth Claim for Fraud & Accounting

Plaintiff's eighth claim alleges Defendants made false statements on her Notice of Default.    Specifically, Plaintiff contends Defendants misrepresented the date Plaintiff's of default and that the Notice applied to both parcels of property.   (SAC ¶¶ 191, 194.)    Further, Plaintiff seeks to determine how much she owes on her mortgage.   (SAC ¶ 208.)   Defendant Wells Fargo argues that the Notice of Default is valid and error-free.   (Wells Fargo Mot. 14.)   Moreover, even if there was an error, her payments still failed to sastisfy her loan agreement.   (*Id.*)

While labeled as fraud, Plaintiff's eighth claim is really a request for an accounting.   A claim for an accounting may take the form of either a legal remedy or an equitable claim.   *Baboobonson-Iam v. Bank of Am. (Home Loans)*, No. CV 10-9171 CAS (MANx), 2011 WL 3103165, at *6 (C.D. Cal. July 25, 2011) (citing *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1049 (N.D. Cal 2009)).   If alleged as a legal remedy, the "request for a legal accounting must be tethered to relevant actionable claims." *Id.*  Because Plaintiff has otherwise failed to sufficiently

1    state an actionable claim against moving Defendants, she is not entitled to an

2    accounting as a legal remedy against these Defendants.

3            To state an equitable claim for accounting, a plaintiff must allege that (1) a

4    relationship exists between the plaintiff and defendant that requires an accounting; and

5    (2) some balance is due the plaintiff that can only be ascertained by an accounting.

6    *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009).  The relationship between

7    the parties need not be fiduciary; all that is required is that "some relationship" exists

8    that requires an accounting.  *Id*.  Moreover, "[a]n action for accounting is not available

9    where the plaintiff alleges the right to recover a sum certain or a sum that can be made

10   certain by calculation."  *Id*.  Plaintiff's claim for an accounting, as pleaded, merely

11   seeks the return of all mortgage payments she has already made to Wells Fargo and

12   requests information to determine how much she still owes.  There is no indication in

13   Plaintiff's SAC that the payment terms contained in her Note were anything but

14   ordinary, especially considering she had a fixed mortgage note.  Thus, Plaintiff is in

15   possession of all materials necessary for her to reduce her claim to a sum that can be

16   made certain by a relatively simple calculation.

17           Accordingly, the Court **GRANTS** Defendants' respective Motions with respect

18   to Plaintiff's eighth claim.

19   **D.    SIXTH CLAIM FOR UNFAIR PRACTICES UNDER CALIFORNIA BUSINESS AND**

20           **PROFESSIONS CODE SECTION 17200 AGAINST ALL DEFENDANTS**

21           Plaintiff's sixth claim alleges a violation of California's unfair competition law

22   ("UCL"), Cal. Bus. & Prof. Code § 17200.  Defendants argue Plaintiff lacks standing

23   to assert a UCL claim, that the claim is insufficiently pled; and that Plaintiff was not

24   given leave to amend.  (Wells Fargo Mot. 21; NDeX Mot. 13; SLS Mot. 5.)

25           The UCL prohibits "any unlawful, unfair or fraudulent business act or practice

26   and unfair, deceptive, untrue or misleading advertising."  *Id.*  Because the statute is

27   written in the disjunctive, liability under each prong of the UCL is separate and

28   distinct from the others and, therefore, the statute "applies separately to business acts

1    or practice that are (1) unlawful, (2) unfair, and (3) fraudulent." *Clark*, 732 F. Supp.
2    2d at 1050.

3         "As to the unlawful prong, the UCL incorporates other laws and treats
4    violations of those laws as unlawful business practices independently actionable under
5    state law." *Id.* (citing *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048
6    (9th Cir. 2000).  A business practice is "fraudulent" within the meaning of the statute
7    if members of the public are likely to be deceived.  *Prata v. Superior Court*, 91 Cal.
8    App. 4th 1128, 1146 (2001).  A business practice is "unfair" within the meaning of the
9    statute when that practice "'offends an established public policy or when the practice
10   is immoral, unethical, oppressive, unscrupulous or substantially injurious to
11   consumers.'"  *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 719
12   (2001) (quoting *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d
13   509, 530 (1984)).

14        Plaintiff's UCL claim suffers from at least two fatal shortcomings.  First,
15   Plaintiff's UCL claim is little more than a list of the various wrongs Plaintiff contends
16   Defendants committed.  Because each prong of a section 17200 violation introduces a
17   separate theory of liability, Plaintiff's failure to allege whether Defendants' actions
18   were unlawful, unfair, fraudulent, or some combination thereof, falls short of the
19   requirements of Rule 8(a)(2).  *See e.g.*, *Clark*, 732 F. Supp. 2d at 1050 (finding the
20   plaintiff's section 17200 claim deficient because the plaintiff's allegations did not
21   specify which of the three UCL prongs defendants violated).

22        Second, Plaintiff's entire UCL claim employs the indiscriminate term
23   "Defendants" without specifying to which Defendant or Defendants each alleged
24   unlawful, unfair, or fraudulent business practice applies.  This method of pleading
25   likewise fails to satisfy the pleading requirements of Rule 8(a)(2).

26        Accordingly, because Plaintiff fails to identify an unfair business practice, the
27   Court **GRANTS** SLS's, NDeX's, and Wells Fargo's Motions with respect to this
28   claim.

**E.    ELEVENTH CLAIM FOR RESPA AGAINST WELLS FARGO**

Plaintiff's eleventh claim alleges Defendant Wells Fargo violated the Real Estate Settlement Procedures Act ("RESPA") because Plaintiff did not receive notice within 15 days of the effective transfer of the servicing rights in her loan.  (SAC ¶¶ 282–83.)  Wells Fargo does not dispute this allegation, but instead argues it did not make false representation or misrepresentation concerning its authority to receive payments under the Promissory Note.  (Wells Fargo Mot. 18.)  Wells Fargo also contends this claim is barred by the statute of limitations.

The purpose of RESPA, 12 U.S.C. §§ 2601–2617, is to protect consumers from abusive practices in the real estate settlement process. 12 U.S.C. § 2601.  By enacting RESPA, Congress sought to "increase the supply of information available to mortgage consumers about the cost of home loans in advance of settlement, and to eliminate abusive practices such as kickbacks, referral fees, and unearned fees."  *Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1008 (9th Cir. 2002).  Under § 2605(b)(1) of RESPA, "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1).

Plaintiff concedes the statute of limitations for a RESPA claim is three years after the transfer.  (SAC ¶ 286.)  Nonetheless, she claims "[t]here was no way Plaintiff could have known [about the service transfer]."  (*Id.*)

Defendant argues that the delayed discovery rule does not apply.  (Wells Fargo Mot. 18.)  The Court agrees.  Under the delayed discovery rule, "the limitations period does not accrue until the aggrieved party has notice of the facts constituting the injury."  *E-Fab, Inc.*, 153 Cal. App. 4th at 1318.  To rely on delayed discovery of a claim, "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  *Fox*, 35 Cal.4th at 808 (quoting *McKelvey v. Boeing N.*

*Am., Inc.*, 74 Cal.App.4th 151, 160 (1999)).  Further, in order for a plaintiff to adequately allege facts supporting a theory of delayed discovery, he or she must plead that despite diligent investigation, he or she could not have reasonably discovered facts supported within the applicable statute of limitations.  *Fox*, at 809.  The plaintiff bears the burden to show "diligence."  *Id*. at 808.

Plaintiff fails to meet her burden for diligence.  Plaintiff alleges the banking practices prohibited her from access to this information, yet she was provided notice of the likelihood of a servicing transfer with her loan documents.  As part of her complaint, Plaintiff includes the RESPA Servicing Disclosure.  (SAC Ex. H.)  Under the heading Servicing Transfer Estimated by Lender, it provides, "[f]or all the mortgage loans that we make in the 12-month period after your mortgage loan is funded, we estimate that the percentage of mortgage loans for which we will transfer servicing is between: 76 to 100%."  (*Id.*)  Thus, Plaintiff was on notice of the probability her loan would be transferred.  However, as Defendant Wells Fargo points out, she failed to do *any* diligence until she became unable to make her mortgage payments and commenced this action. (Wells Fargo Mot. 19.)  As a result, she brought this claim five years after the recordation of ADOT with the Los Angeles County recording office.  (*Id*. (citing RJN Ex. D).)  The SAC lacks necessary allegations for delayed discovery.

Because Plaintiff fails to provide sufficient facts to meet the delayed discovery exception to the statute of limitations for RESPA, the Court **GRANTS** Defendants' Motion with respect to this claim.

## F.   ORDER TO SHOW CAUSE

Plaintiff's sixth and tenth claims allege fraud and unfair business practices, respectively, against Sherry Doza and Tipi Robertson.  (Dkt. No. 68.)  Neither of these parties has moved to dismiss these claims.  However, as discussed *supra*, both of these claims are barred by the applicable statutes of limitations.

A court may dismiss a claim sua sponte pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *Wong v. Bell*, 642 F.2d 359, 361–62 (9th Cir. 1981). Given the apparent applicability of the statute of limitations here, Plaintiff is **ORDERED TO SHOW CAUSE** within 30 days of the date of this Order why this action should not be dismissed against Doza and Robertson for failure to state a claim upon which relief can be granted. If Plaintiff fails to show cause within 30 days, Plaintiff's sixth and tenth claims, as alleged against Doza and Robertson, will be dismissed with prejudice.

## V.    CONCLUSION

For the reasons discussed above, NDeX's and LSI's respective Motions to Dismiss are **GRANTED** in their entireties. Wells Fargo's Motion is **GRANTED in part and DENIED in part**. In light of the multiple failed opportunities Plaintiff has been afforded to amend her pleadings, the Court finds that providing Plaintiff yet another attempt to amend would be futile. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) ("A district court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities.") Accordingly, Plaintiff's fourth, fifth, sixth, seventh, eighth, ninth, tenth, and eleventh claims are **DISMISSED WITH PREJUDICE**.


**IT IS SO ORDERED.**


June 6, 2012


_____
**HON. OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**